ALLEN *v.* GRENADA BANK *et al.*

(Division B.    April 20, 1931.    Suggestion of Error Overruled May 12, 1931.)

[133 So. 648.    No. 29401.]

**B. B. Allen**, of Indianola, for appellants.

Alfred Stoner, of Greenwood, for appellants.

**Moody & Johnson**, of Indianola, for appellee.

Argued orally by **Alfred Stoner** and **B. B. Allen**, for appellant, and by **C. C. Moody**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

This is the second appearance of this case here, the report of the first appeal being found in 155 Miss. 91, 124 So. 69. On the second trial, the issue now particularly before the court was more fully developed by the evidence, so that an amended statement of the salient facts is to be made, in accordance with the present effect of the findings by the chancellor.

In December, 1920, W. L. Harrison was, and had been for some years, engaged in the real estate, insurance, and loan business at Moorhead, Mississippi. He was also a member of the board of directors of the Grenada Bank, and a member of the loan committee of said directorate,

although the real and dominant authority of the bank, in respect to the making of loans by it, seems to have been vested in its president, J. T. Thomas. One of these appellants, J. A. Ely, was the owner of a plantation, in Sunflower county, which was incumbered, as the record now appears, to the aggregate amount of more than ninety thousand dollars, and it had become necessary that these incumbrances be refunded, as well as that adequate financial arrangements be made for the plantation operations of the coming year. In this urgent situation, appellant Ely applied to Harrison for aid, and, it being obvious that it would be impossible to refinance the property at so large an amount as ninety thousand dollars, Harrison was engaged by appellant, for the conditional compensation hereinafter mentioned, to negotiate with the holders of the incumbrances for a reduction in the respective amounts due said incumbrancers in consideration of the immediate payment in cash, and thereupon to secure a loan for the total amount necessary to close the entire indebtedness after the reductions had been agreed upon. Harrison made diligent efforts to get these amounts reduced to an aggregate of forty or forty-five thousand dollars, and did succeed in getting them reduced to fifty thousand six hundred dollars. He made efforts also to procure the loan, from persons other than banks, for the necessary refunding amount, but failed, owing to the fact, among other things, that the land comprising the plantation was a sixteenth section. Finally Harrison applied to the Grenada Bank for the loan, and upon his urging the loan there, and agreeing himself to indorse and to furnish security for twelve thousand dollars of the amount, Mr. Thomas, the president, agreed to make the loan, and states very candidly that he was largely influenced so to do by the fact that he knew that appellant Ely was to pay Harrison a bonus or compensation of five thousand dollars for his services in case he should succeed in putting this reduced refund-

ing transaction through to a consummation. The loan was made by the bank on the terms stated; and thereupon a note for five thousand dollars was executed by Ely and delivered to Harrison to cover the said bonus or compensation, and the said note was afterwards transferred by Harrison for value to appellant Allen. This note appellant Ely now contests on the ground that Harrison was a director of the bank and a member of its discount committee, and that, regardless of the form of the transaction, the note for the bonus or compensation was of the same effect in law as if given to the bank itself, and in consequence was and is usurious.

Even if we should consider that Harrison was the agent of the lender, rather than of the borrower, the law is fairly well settled that, where the agent of the lender has received from the borrower what is commonly called a bonus, and for and in consideration thereof the said agent has rendered valuable requisite services to the substantial advantage of the borrower outside of and beyond the making of the loan, and outside of any obligation justly incumbent on the lender in the preparation or consummation thereof, there is no usury if the lender receives, and is to receive, no part of the compensation paid by the borrower to said agent for and in consideration of said services, and the said compensation is not so far fictitious or excessive or unfair as to support the conclusion that it was a mere circuitous device to evade the usury laws; and this is particularly true where, as in this case, the agent, in order to procure the loan, becomes indorser and furnishes security for a substantial portion of it. This statement of the rule is confirmed by the text, and the numerous cases cited, in 27 R. C. L., pp. 231-238; by the cases cited in the notes, 46 Am. St. Rep., pages 194-199, and by Floyd v. Candler, 148 Miss. 200, 205, 114 So. 344. See, also, Pass v. Mortgage Security Co., 66 Miss. 365, 6 So. 239.

The inquiry becomes, therefore, in such cases, one of fact; the transaction to be scrutinized with due care and caution in respect to its good faith. The evidence is sufficient to sustain the findings of fact by the chancellor; wherefore the case falls within the protection of the rule as stated, and the decree must be affirmed.

Affirmed.